**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE A. HESKETT,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>　　　Defendant.<br>_____/ | Case No. 1:25-cv-00274-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

### I.   INTRODUCTION

Plaintiff Diane A. Heskett ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

### II.   BACKGROUND

Plaintiff was born in 1979, completed high school, college, and obtained a CNA certificate; and previously worked as a security guard. (Administrative Record ("AR") 55–56; 83.) Plaintiff filed a claim for DIB on October 11, 2022, alleging she became disabled on July 2, 2022, due to back and disc pain, feet spurs, ankle pain, Ebstein Barr Virus, Type II Diabetes, an enlarged liver and spleen, carpal tunnel, and arthritis. (AR 17, 84.)

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

A.    **Relevant Evidence of Record**[2]

In May 2022, State agency physicians A. Dispia, M.D. and Alicia V. Blando, M.D., found that Plaintiff's medically determinable impairments were all non-severe. (AR 93–96, 112–16.).[3]

In April 2022, Plaintiff's gynecologist attested on a state disability form that Plaintiff was "disabled" or otherwise incapable of performing her customary work from April 4, 2022, through May 17, 2022, during which time Plaintiff was recovering from a hysterectomy. (AR 1508.)

Following his examination of Plaintiff in February 2023, consultative examiner Roger Wagner, M.D., opined that Plaintiff had no standing, walking, sitting, or manipulative limitations, and did not require an assistive device. (AR 636.) Dr. Wagner further opined that Plaintiff could lift and carry up to 50 pounds occasionally and up to 25 pounds frequently; could climb, stoop, and crouch frequently with no workplace environmental limitations. (*Id.*)

In January 2024, Plaintiff's spinal surgeon, Ali Najafi, M.D., opined in a discussion / plan note that he would "continue to extend [Plaintiff's] disability as she feels she in unable to go back to work due to the extreme pain in the bilateral lower extremities as well as the weakness she is experiencing." (AR 1045.)

B.    **Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on May 12, 2023, and again on reconsideration on February 26, 2024. (AR 17, 82–120.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 138–39.) The ALJ conducted a hearing on November 8, 2023. (AR 47–81.) Plaintiff appeared at the hearing with her attorney and testified as to his alleged disabling conditions and work history. (AR 49–70.) A Vocational Expert ("VE") also testified at the hearing. (AR 70–81.)

C.    **The ALJ's Decision**

In a decision dated November 15, 2024, the ALJ found that Plaintiff was not disabled. (AR 17–40.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 20–40.) The ALJ decided that Plaintiff last met the insured status requirements of the Act

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.
[3] These findings were reiterated on reconsideration on February26, 2024.

through December 31, 2026, and she had not engaged in substantial gainful activity since July 2, 2022, the alleged onset date (step one). (AR 20.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder with labral tear, bilateral carpal tunnel syndrome, Epstein Barr virus infection, diabetes mellitus, fatty liver, reactive gastropathy, irritable bowel syndrome, gastroesophageal reflux disease, gastritis, esophagitis, obesity, major depressive disorder, generalized anxiety disorder and post-traumatic stress disorder. (AR 20–25.) The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 25–27.)

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b). The claimant can lift and/or carry twenty pounds occasionally, ten pounds frequently, and sit, stand and walk six hours each during the course of an eight-hour workday, five days a week. The claimant can frequently push and/or pull with the bilateral lower extremities. The claimant can frequently push, pull, reach, handle and finger with the bilateral upper extremities. The claimant can have no exposure to hazards. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes and scaffolds as those activities are defined in the Dictionary of Occupational Titles (D.O.T.) and Selected Characteristics of Occupations (SCO). The claimant can understand, remember and carry out simple instructions. The claimant can tolerate occasional interactions with supervisors and coworkers. The claimant can have no interactions with the public, meaning she can have no more than incidental contact. The claimant is limited to object-oriented work, meaning she can work

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

with things rather than people. The claimant can tolerate occasional changes in a routine work setting.

(AR 27–37.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms," the ALJ rejected Plaintiff's subjective testimony as to the "the intensity, persistence and limiting effects of these symptoms" "not entirely consistent with the medical evidence and other evidence in the record." (AR 34.)

The ALJ determined that Plaintiff could not perform her past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five). (AR 37–40.) In making this determination, the ALJ posed a series of hypothetical questions to the VE. (AR 71–74.) The VE testified that a person with the RFC specified above could perform the job of toy stuffer, table worker, and document preparer. (AR 72–73.) The ALJ ultimately concluded Plaintiff was not disabled at any time after July 2, 2022, the alleged onset date. (AR 40.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on January 3, 2025. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*,

180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

(citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### IV.   DISCUSSION

Plaintiff asserts two claims of error: (1) Plaintiff's physical RFC was not supported by substantial evidence because the ALJ failed in their duty to develop the record and obtain an opinion from an examining physician; and (2) the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's subjective symptom complaints. (*See* Doc. 11-1.) The Court agrees that the ALJ erred by not fully developing the record and will remand for further proceedings on that basis.

**A.   The ALJ's Physical RFC Determination is Not Supported by Substantial Evidence**

Plaintiff first claims that the ALJ erred in formulating an RFC after rejecting each of the medical opinions in the record as unpersuasive. (Doc. 11-1 at 5–9.) In defense of the ALJ's decision, the Commissioner argues that because ALJs—not medical professionals—are

responsible for determining a claimant's RFC, the ALJ's conclusion must be upheld. (Doc. 13 at 3–4.)

An RFC is the most a claimant can do despite their limitations and is based upon all relevant evidence in the record, including medical records, medical source statements, and symptom testimony. 20 C.F.R. § 404.1545(a)(1)-(3); *Shafer v. Barnhart*, 120 F. Appx. 688, 698 (9th Cir. 2005). And, as the Commissioner contends, it is true that a determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* (Doc. 13 at 2); 20 C.F.R. §§ 414.927(d)(2) (RFC is not a medical opinion), 414.946(c) (identifying the ALJ as responsible for determining RFC). And that legal determination necessarily involves engaging in credibility determinations, resolving conflicts in medical testimony, and resolving evidentiary ambiguities, *see Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)—such that an ALJ's RFC determination need not mirror any particular provider's opinion, *see e.g.*, *Petrini v. Berryhill*, 705 F. App'x. 511, 512 (9th Cir. 2017).

Additionally, when formulating an RFC, ALJ's have some discretion to perform independent review of medical evidence and translate that evidence into functional terms. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). For example, claimants routinely continue pursuing care between the State agency physician's review at the initial/reconsideration levels and the ALJ's subsequent hearing decision, thereby generating new medical records. *See de Hoog v. Comm'r of Soc. Sec.*, No. 2:13–CV–0235–KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014) (explaining that "[i]n virtually every case further evidence is received after the [S]tate agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing. For that very reason, the ALJ is tasked with considering the evidence in the record as a whole."). If the mere passage of time and presence of additional medical evidence in the record established ambiguity, a consultative examination would be required in every case. Yet the regulations provide that the agency *may* obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ *must* do so in every case. *See* 20 C.F.R. § 414.919; *Meadows v. Saul*, 807 F.

App'x 643, 647 (9th Cir. 2020) (noting there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time.").

In light of this framework, the Court is mindful that the ALJ, not this Court, is responsible for resolving conflicts in the evidence and that "[a]n ALJ's duty to develop the record further is triggered *only* when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (emphasis added). Therefore, the question before this Court is whether the ALJ's duty to develop the record further was triggered under the circumstances in the present case.

In answering that question, the Court first observes that ALJs are obliged to exercise caution in formulating an RFC that leads to a finding of non-disability in cases where "no doctor or other medical expert opined, on the basis of a full review of all relevant records," that Plaintiff could perform work during the relevant time period. *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) (holding that ALJ "should have exercised caution because "no doctor or other medical expert . . . opined, on the basis of a full review of all relevant records, that [Plaintiff] is capable of working or is prepared to return to work") (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)). For the following reasons, the Court finds that such caution was warranted here.

In the present case, the ALJ considered and evaluated several medical opinions regarding the effects of Plaintiff's impairments, specifically from State Agency medical consultants—Dr. Dipsia on initial review, (*see* AR 93–96), and Dr. Blando on reconsideration, (*see* AR 112–16)—a consultative examiner—Dr. Wagner, (AR 636)—and several of Plaintiff's treating physicians—including Plaintiff's gynecologist, Dr. Marquez, (AR 1508), and Plaintiff's spinal surgeon, Dr. Najafi, (AR 1045). *See also* 20 C.F.R. § 404.1527(a)(2), 416.927(a)(2) (defining medical opinions as statements that "reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions."). The ALJ found each of these medical opinions "unpersuasive," finding that (1) "[t]he Stage Agency medical consultants failed to

provide supportive evidence to support[] a non severe finding" and that their findings were "inconsistent" with Plaintiff's impairments and subjective reports of pain; (2) Dr. Wagner's opinion was "inadequately supported and inconsistent with his own findings," as well as "inconsistent" with objective imaging and Plaintiff's history of surgical and other treatment interventions;" (3) Dr. Marquez's opinion was "not a residual capacity assessment" and was only "intended for a short period of less than two months;" and (4) Dr. Najafi's opinion impermissibly opined on "an issue reserved to the Commissioner of Social Security." (AR 29.) In other words, the ALJ found every medical opinion in the record concerning Plaintiff's impairments not credible or otherwise impermissible and then found that, on one hand—contrary to the consultative examiner's and State agency physicians' opinions—Plaintiff's impairments would result in some work-related restrictions instead of those opined—but on the other hand—contrary to the opinions of several of Plaintiff's treating physicians—Plaintiff was not impaired in a way that qualified as disabled under the relevant legal framework. While the absence of a medical opinion is not necessarily fatal, the RFC determination still must be supported by substantial evidence. *See Bradford v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00232-TUC-SHR (JR), 2022 WL 4538569, at *5 (D. Ariz. Aug. 18, 2022).

Turning to whether the ALJ's assessed RFC is supported by substantial evidence, the Court observes that it is well-settled that an ALJ may not render their own medical opinion and is not empowered to independently assess clinical findings "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d 459–60; *see also, Tackett*, 180 F.3d at 1102–03 (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (reasoning that it is improper for the ALJ to act as the medical expert); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An 'ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . and he 'must not succumb to the temptation to play doctor and make his own independent medical findings'" (in(quoting ).

Applying this rule to the present case, the Court finds that the ALJ did not simply synthesize the medical evidence and opinions to reach an RFC determination. Instead, without

relying on any medical opinion regarding what work-related restrictions would be appropriate, the ALJ based their RFC determination on their own interpretation of Plaintiff's testimony and the medical evidence—formulating limitations to the RFC out of whole cloth and concluding that those limitations were sufficient to address Plaintiff's impairments. For example, while the treatment records establish Plaintiff was obese, (AR 2155, 2158), and had back, (AR 1025–27, 1030, 1032, 1035, 1042, 1090), right shoulder, (AR 421, 760–61, 764, 768, 788, 876, 1259–68), neck, (AR 866, 1042), and gastrointestinal impairments, (AR 501, 510, 545, 563–64, 567–68, 573, 902, 949, 958, 971, 1338–39, 2049, 2094), the records do not indicate the functional limitations caused by such impairments. *See Hurt v. Kijakazi*, No. 3:20-CV-00481-CSD, 2022 WL 444355, at *9–10 (D. Nev. Feb. 14, 2022) ("When the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities . . . [the] bare medical findings are unintelligible to a lay person in terms of residual functional capacity.'") (quoting *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 293 (1st Cir. 1986)). Moreover, while the imaging studies of Plaintiff's neck, lumbar spine, and shoulder yielded results such as mild C1-C2 degenerative changes without spinal canal stenosis, (AR 441), tiny acute versus subacute Schmorl's node within the superior endplate of C7 associated with minimal adjacent marrow edema, (AR 539), mild degenerative disc disease throughout the cervical spine with no large disc bule or disc herniation and no canal or foraminal stenosis, (AR 779), mild retrolisthesis in the body of the L5 vertebra in relationship to the sacrum, (AR 414), tear of the posterior glenoid labrum and degenerative changes of the anterior superior labrum, (AR 537), mild subacromial subdeltoid bursitis, (AR 776), and mild to moderate inferior spurring along the distal clavicle due to acromioclavicular joint osteoarthritis and slightly laterally down sloping acromion, (AR 1918)—it is not clear *what* functional limitations result from those clinical findings. *See Howell v. Kijakazi*, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (MRIs, radiological studies, and X-rays "generally reflect only the findings, impressions, and medical diagnoses, which are difficult for a lay person to interpret.").

Therefore, the Court finds that the underlying treatment and imaging records are the kinds of "raw," *Shipp v. Colvin*, No. CV 13-9468 JC, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26,

2014), and "ambiguous" evidence that itself does not provide sufficient indications of Plaintiff's physical functional limitations and thus, the ALJ was not qualified to the translate evidence into functional limitations and engage in their "own exploration and assessment" of a Plaintiff's impairments. *See McAnally v. Berryhill*, Case No.: 3:18-cv-02272-GPC-RNB, 2020 WL 1443734, at *7 (S.D. Cal. Mar. 25, 2020) (quoting *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). It then follows that, under these circumstances, the ALJ had a duty to develop the record further, *see Ford*, 950 F.3d at 1156.

Indeed, Ninth Circuit courts have found that "[b]arring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decisions." *Bradford*, 2022 WL 4538569, at *5 (quoting *Howell*, 2022 WL 2759090, at *7); *Walker v. Comm'r of Soc. Sec.*, Case No. 2:22-cv-01871-EJY, 2024 WL 64784, at *6 (D. Nev. Jan. 4, 2024) ("While the ALJ 'can pick and choose between opinions expressed by the experts,' when an ALJ decides severity or residual functional capacity 'without the support of any of the medical opinion evidence,' this is error.") (quoting *Holtan v. Kijakazi*, 2:22-cv-01222-VCF, 2023 WL 2424648, at *3 (D. Nev. Mar. 9, 2023)). Or, put another way, without a persuasive medical opinion to support the conclusion that Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; sit, stand and walk six hours each during the course of an eight-hour workday, five days a week; frequently push and/or pull with the bilateral lower extremities; frequently push, pull, reach, handle and finger with the bilateral upper extremities; have no exposure to hazards; only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and never climb ladders, ropes and scaffolds—the ALJ's RFC lacks the support of substantial evidence. *See Holtan,* 2023 WL 2424648, at *3 (finding that the ALJ erred primarily by simply summarizing the medical evidence without making it clear how the ALJ then translated that evidence into an RFC, noting that it was "particularly concerning because the ALJ did not rely on any of the medical opinions, <u>finding all of the medical opinions of record unpersuasive</u>."); *De Gutierrez v. Saul*, No. 1:19-cv-00463-BAM, 2020 WL 5701019, at *6 (E.D. Cal. Sept. 24, 2020) ("Without a medical opinion to support the conclusion that Plaintiff was able to perform" a certain level of work, lift and carry certain weight, or sit, stand or walk for certain

11

periods of time, "the ALJ's RFC lacks the support of substantial evidence.") (citing *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) ("where an ALJ reaches conclusions about claimant's . . . capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence")); *Goolsby v. Berryhill*, Case No. 1:15–cv–00615–JLT, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017) (finding that an ALJ erred in including "simple routine tasks" in RFC when the record did not contain medical opinions supporting this limitation); *Shipp*, 2014 WL 4829035, at *7 ("Since . . . the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record."). Accordingly, the Court finds that the ALJ erred in evaluating Plaintiff's RFC.

**B.     The ALJ's Error was not harmless.**

The Court must now consider whether the ALJ's error was harmless. *Molina*, 674 F.3d at 1115. Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Id.*; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted) (first quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and then quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

This Court finds this was harmful error necessitating remand. *Tommasetti*, 533 F.3d at 1038 (ALJ error is harmless if it is "inconsequential to the ultimate nondisability determination."). While the ALJ assigned physical limitations restricting Plaintiff to light work with additional limitations, the RFC is still without supporting evidence. Had the ALJ included different limitations in the RFC based upon a proper review of the evidence and an adequate record, the ultimate disability determination may have been different.[5] *See Clarenda A. S. v. O'Malley*, No. 1:24-CV-00127-DKG, 2024 WL 4851214, at *5 (D. Idaho Nov. 21, 2024) (finding harmful error

---

[5] This is not to say that the disability determination will or should be different regarding the period at issue--only that the Court cannot determine the outcome would remain the same upon a correct evaluation of the record.

where the ALJ relied on her own interpretation of the medical records without any medical opinion of Plaintiff's physical functioning in formulating the RFC). In particular, because the record "[did] not support the assumptions in the hypothetical[s]" posed to the VE, the hypotheticals were incomplete and therefore, the "vocational expert's opinion [had] no evidentiary value." *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001).

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the Court finds that remand for further proceedings is warranted. *See Osborne v. Commissioner of Soc. Sec.*, No. 1:22-CV-01538-EPG, 2024 WL 1312202, at *5 (E.D. Cal. Mar. 27, 2024) (remanding for further proceedings where the ALJ relied on their own judgment in assessing the RFC without the support of any medical opinion evidence). On remand, the Commissioner shall further develop the record, as outlined above, to allow for proper consideration of the medical evidence related to the time period at issue.

### C.  The Court Declines to Determine Plaintiff's Remaining Assertion of Error

As the Court finds that remand is appropriate for further development of the record, the Court does not reach Plaintiff's additional assertion of error directed to her subjective symptom complaints, which were discounted in part because they were inconsistent with and/or unsupported by that undeveloped record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by

substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Diane A. Heskett and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **July 16, 2025**                         /s/ *Sheila K. Oberto*
                                                                UNITED STATES MAGISTRATE JUDGE